**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**LYRIC O. ROBERTS,**

     **Plaintiff,**

**vs.**                            **Case No. 4:24-cv-366-MAF**

**FRANK BISIGNANO,[1]
Commissioner of Social Security,**

     **Defendant.**

_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 8, by United States District Judge Mark E. Walker. ECF No. 10. This cause is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Defendant, the Commissioner of the Social Security Administration (Commissioner), denying Plaintiff's application for Period of Disability and Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). After consideration of the record, for the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

_____

[1] Martin J. O'Malley was the originally named Defendant as he was the Commissioner at the time of filing. Commissioner Bisignano is automatically substituted as Defendant pursuant to Rule 25(d).

## I.    Procedural History

Plaintiff filed an application for Period of Disability and DIB, and a Title XVI application for SSI, on December 4, 2021, alleging a date of disability beginning on October 21, 2021. Tr. 11[2]; 232-38. Those applications were denied initially on January 10, 2023 (Tr. 101-10), and on reconsideration on May 3, 2023. Tr. 118-33. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on May 18, 2023. Tr. 144-45. With the consent of the Plaintiff, a telephonic hearing was held on January 16, 2024, before ALJ Joshua R. Heller. Tr. 39-60. Plaintiff; her attorney, Diane Cassaro, Esq.; and a Vocational Expert (VE), Joyce Courtright, appeared and participated. Plaintiff (Tr. 44-55) and VE Courtright (Tr. 55-60) testified during that hearing. See also Tr. 384-86 (VE Curriculum Vitae). ALJ Heller entered his decision on February 20, 2024, concluding that Plaintiff was not disabled as defined by the Social Security Act from October 21, 2021, through the date of the decision. Tr. 11-24. The Appeals Council denied review on July 11, 2024, rendering ALJ Heller's decision the final decision of the Commissioner. Tr. 1-7. That decision is ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

---

[2] References to the record in this case, ECF No. 7, will be to "Tr." followed by the relevant page number.

Through counsel, Plaintiff filed her complaint with this Court on September 12, 2024. ECF No. 1. The Commissioner filed the administrative record on November 8, 2024. ECF No. 7. Plaintiff filed a Memorandum in Support of her Complaint on December 23, 2024. ECF No. 14. The Commissioner filed a responsive memorandum in support of the Commissioner's position on March 17, 2025. ECF No. 19.

## II.    Issue Presented

In her Complaint and Memorandum in Support, Plaintiff raises the following issues:

1.    Whether the ALJ properly evaluated the medical opinions when assessing Plaintiff's residual functional capacity (RFC).

2.    Whether the RFC is supported by substantial evidence.

3.    Whether the ALJ failed to identify and resolve the apparent conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT), resulting in an occupation provided at step 5 that is contrary to Plaintiff's RFC.

ECF No. 14, p. 9. As these are the only issues presented, the Court will limit its review of ALJ Heller's decision and record to these matters.

## III.    Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1986). Affirmance is required if the decision is supported by substantial evidence in the record and premised

upon correct legal principles. 42 U.S.C. § 405(g); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, 703 F.2d at 1239; <u>accord</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, <u>Id.</u>, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1273 (11th Cir. 1985).

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). It is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.    Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

---

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th

---

determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '[RFC] assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered his decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. <u>See</u> 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

Pursuant to the revised regulations applicable to claims filed on or after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 CFR § 416.920c(a) (2017). The removal of the treating source rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as ensure that courts are not reweighing the evidence under the substantial evidence

standard of review, which is intended to be a highly deferential standard. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The Eleventh Circuit has recognized that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." Matos v. Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, treatment relationship, specialization, and other factors. 20 CFR § 416.920c(c)(1)-(c)(5) (2017). Because supportability and consistency are the "most important" factors, the ALJ must articulate how these factors were considered for a medical source's opinions or prior administrative medical findings, but an ALJ is not required to articulate how the remaining factors were considered unless there are equally persuasive medical opinions or prior administrative medical findings as explained in 20 CFR § 416.920c(b)(2)-(b)(3). The ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors; and the ALJ is not required to articulate how he or she considered each opinion

or finding. 20 CFR § 416.920c(b)(1) (2017).

The Commissioner's regulations do not require the ALJ to use any "magic language" or follow a particular formula when addressing the supportability and consistency factors. See 20 CFR § 416.920c(b)(2); Thaxton v. Kijakazi, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (internal citations omitted). Accordingly, the ALJ does not have to address the supportability and consistency factors through separate analyses if the analysis addresses the substance of both factors. See Alvarez v. Comm'r of Soc. Sec., No. 20-cv-24711-Bloom/Otazo-Reyes, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (finding that the ALJ's simultaneous consideration of supportability and consistency factors was not improper) (citing, inter alia, Thaxton, 2022 WL 983156, at *8); Rivera v. Kijakazi, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation.") (citing Cook v. Comm'r of Soc. Sec., No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)).

When a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir.1985). Therefore, this Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypothetical question that formed the basis of the vocational expert's testimony, and if so, whether such failure constitutes grounds for reversal. "Hypothetical questions adequately account for a claimant's limitations ... when the questions *otherwise implicitly account* for them." Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 903 (11th Cir. 2012) (emphasis added). The Court may affirm the ALJ's opinion when "the ALJ's hypothetical to the VE properly comprised, expressly or by implication, all of [the Plaintiff's] impairments, and the VE's answer constituted substantial evidence that [the Plaintiff] could perform work in the national economy." Id. If the ALJ "asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the Plaintiff's] impairments, the vocational expert's testimony," would not be substantial evidence for a disability determination. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).

## IV.    ALJ Heller's Findings

ALJ Heller properly articulated and followed the five-step sequential

evaluation process for determining disability. <u>See</u> 20 CFR § 416.1520(a). In

doing so, ALJ Heller made the following findings (finding in bold):

**1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2026.**

This finding is not in dispute.

**2.    The claimant has not engaged in substantial gainful activity since October 21, 2021, the alleged onset date (20 CFR 404.1571 _et. seq._ and 416.971 _et. seq_).**

This finding is not in dispute.

**3.    The claimant has the following severe impairments: acoustic neuroma status post craniotomy with residuals (20 CFR 404.1520(c) and 416.920(c)).**

This finding is not in dispute. There is no question that the above

medically determinable impairments significantly limit the ability to perform

basic work activities as required by SSR 85-28. Tr. 14.

However, ALJ Heller concluded that with respect to Plaintiff's medically

determinable mental impairments of PTSD, depression, anxiety, and

substance abuse disorder (cannabis), those conditions, considered

singularly and collectively, do not cause more than a minimal limitation in

Plaintiff's ability to perform basic work activities and are therefore nonsevere.

ALJ Heller stated that in each of the Paragraph B functional areas, that

Plaintiff had at most a mild limitation. Tr. 14-15. Other than alleged "memory" issues, Plaintiff does not contend that Plaintiff's mental health conditions impacted her ability to perform basic mental work activities and are therefore nonsevere.

With respect to Plaintiff's memory issues, ALJ Heller determined that Plaintiff could "understand, remember, and execute simple and complex instructions, and that she could make judgments on simple and complex work-related tasks." Tr. 14; 456; 738. Both of her consultative psychological examinations confirmed that Plaintiff had intact memory, including the ability to repeat digits forward and backward, spelling words forward and backward, and repeating the months of the year in reverse order. Tr. 14.

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).**

This finding is not in dispute.

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can lift, carry, push, and pull ten pounds occasionally and five pounds frequently. The claimant can sit for six hours, stand for two hours, and walk for two hours. The claimant can climb ramps and stairs occasionally. The claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch. The claimant can never crawl. The**

**claimant can never work at unprotected heights. The claimant can never work around moving mechanical parts. The claimant can work operating a motor vehicle occasionally. The claimant can perform simple, routine tasks and engage in simple, work-related decisions, defined as reasoning level 3 in the Dictionary of Occupational Titles. The claimant can work only in indoor environment. The claimant requires the use of a cane in the right, dominant hand while standing or walking, but can still carry small objects in the left, non-dominant hand while standing or walking.**

This finding is disputed.

ALJ Heller confirmed that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.1529, 416.929, and SSR 16-3p. Tr. 22. ALJ Heller considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.1520c and 416.920c. Tr. 15-16.

In considering Plaintiff's symptoms, ALJ Heller was required to follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques – that could reasonably be expected to produce Plaintiff's pain or other symptoms. Tr. 16.

Second, once ALJ Heller identified an underlying physical or mental impairment(s) that could reasonably be expected to produce Plaintiff's pain or other symptoms, he was required to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ALJ Heller was required to consider other evidence in the record to determine if Plaintiff's symptoms limit the ability to do work-related activities. Tr. 16.

According to ALJ Heller, Plaintiff has asserted multiple disabling conditions affecting her ability to tend to personal care, particularly because of dizzy spells. Tr. 277. While Plaintiff could prepare simple meals, shop in stores and by phone, pay bills and handle a savings account, she had limited ability to bend, walk, talk, hear and see. Tr. 16. In his Order, ALJ Heller noted that at the hearing, Plaintiff primarily asserted neurofibromatosis type 2 (NF-2), left sided facial paralysis, memory loss, vertigo, primary gland lesions, PTSD, depression, and anxiety as disabling conditions. Id. Tr. 43-44. Plaintiff's unpredictable dizziness and balance issues were the reasons for her alleged disability. Tr. 16; 46-47. Plaintiff contends she can't do much

because of balance, dizziness, and light sensitivity issues – she can't walk or stand for more than fifteen to thirty minutes, can't bend or squat, and can't otherwise engage. Tr. 16, 50-51. She's limited to caring for her young child. Id. Plaintiff does sparingly use a cane for ambulation, and takes medication for her mental health issues (anxiety and depression), which gives her some relief, but the medication does cause her some sleep issues. Id.; Tr. 16. Plaintiff also contends that her memory, concentration and task completion are also challenges on a daily basis. Tr. 52-53. She also suffers from partial paralysis on the left side of her face, her left eye does not blink normally, and she has deafness in her left ear. Tr. 54-55. Plaintiff uses cannabis, but does not have a medical marijuana card. Tr. 55. ALJ Heller found that Plaintiff has the severe impairment of acoustic neuroma status post craniotomy with residuals. Tr. 16.

ALJ Heller specifically references all of Plaintiff's interactions with health care providers beginning in March 2020. Tr. 17-21. Plaintiff does not challenge most of this analysis, so repeating it here would add little to the discussion. Instead, Plaintiff concentrates on the examinations and reports of David Keen, M.D., and F. Donald Kelly, Ph.D. ECF No. 14, p. 11-14. The Court will focus its attention on ALJ Heller's consideration of these opinions.

With respect to Dr. Keen, ALJ Heller recounted how Plaintiff had a consultative physical examination on November 7, 2022. Tr. 19; 728-733. During that examination, Plaintiff reported balance and disorientation issues, troubles with concentration and memory, and that she was using a cane. Tr. 19; 732. Dr. Keen reported that upon examination, Plaintiff's balance and ability to tandem walk were fair; that her grip strength was 5/5 bilaterally; she had hearing loss in her left ear; and that the examination of her head, eyes, neck, chest, lungs, hearing, abdomen, and back were unremarkable. Tr. 19. Plaintiff was diagnosed with balance disorder, memory loss, deafness, tumor of brain and dizziness/giddiness. ALJ Heller found Dr. Keen's opinion to be largely persuasive and contends that he incorporated those findings into the RFC, but did not give weight to Plaintiff's statement of her history as those had less value than the objective findings. Tr. 22.

ALJ Heller recounted two separate encounters between Plaintiff and Dr. Kelly. Tr. 18-19. Plaintiff had a consultative psychological examination with Dr. Kelly on October 31, 2020. Tr. 18; 452-57. At that examination, Plaintiff complained of anxiety and depression. She stated that she was no longer using alcohol, but that she continued to use cannabis. Tr. 18; 455. Plaintiff was able to repeat 6 digits forward and backward; correctly recited the months of the year in reverse order; correctly spelled "water" and

"memory" backward; recalled 3-4 words after a delay; responded satisfactorily to five hypothetical situations requiring the use of judgment and problem-solving abilities; and she denied auditory or visual hallucinations. Tr. 18; 456. Plaintiff was diagnosed with unspecified depressive disorder, unspecified anxiety disorder, and cannabis use disorder. Tr. 18; 457. Ultimately, Dr. Kelly concluded that Plaintiff's symptoms were not severe enough to prevent employment or engagement with friends for leisure activities, and Plaintiff would understand, remember, and execute simple and complex instructions and make judgments on simple and complex work-related tasks. Id. Additionally, Plaintiff's communication and social skills were adequate for work and social environments. Id.

After her surgery, Plaintiff returned to Dr. Kelly for another consultative psychological examination on December 4, 2022. Tr. 19; 734-40. Again, Plaintiff repeated six digits forward and backward; recited the twelve months in reverse order; correctly spelled "water" and "memory" backward; recalled four words after a time delay; and responded satisfactorily to five hypothetical situations requiring the use of judgment and problem-solving. Tr. 19; 737-38. Plaintiff denied auditory and visual hallucinations and no DSM diagnosis was given. Tr. 19; 738. Again, Dr. Kelly concluded that Plaintiff's symptoms were not sufficiently severe to prevent employment or leisure activities; that

Plaintiff could understand, remember, and execute simple and complex instructions and make judgments on simple and complex work-related tasks. Tr. 19; 739. Plaintiff's communication and social skills were adequate for effective functioning in social and work environments. Id. ALJ Heller found Dr. Kelly's opinions to be largely persuasive and consistent with the other state agency mental health reviewers. Tr. 21; 63-82; 85-100.

ALJ Heller contended that he considered all the medical and mental health evidence, subjective complaints, and treatments, and incorporated those opinions into his RFC assessment. Tr. 22. There were limitations on climbing, the avoidance of hazards, and limitations to a sedentary exertional level, time limits on standing and walking, and postural limitations. Id. ALJ Heller believed Plaintiff could perform positions subject to the articulated RFC. Id.

**6.    The claimant has no past relevant work (20 CFR 416.1565 and 416.965).**

This finding is not in dispute.

**7.    The claimant was born on June 4, 1999 and was 22 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

This finding is not in dispute.

**8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

This finding is not in dispute.

**9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).**

This finding is not in dispute.

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.1569 and 416.1569a, 416.969, and 416.969a).**

This finding is disputed.

Because ALJ Heller found that Plaintiff had limitations which eroded Plaintiff's ability to work, he asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE testified that given all these factors, the individual would still be able to perform the requirements of the following representative occupations:

| Representative Occupations | DOT | Strength/Skills | Jobs in National Economy |
|---|---|---|---|
| Lens Inserter | 713.687-026 | Sedentary/Unskilled | 27,000 |
| Lens Block Gauger | 716.687-030 | Sedentary/Unskilled | 23,000 |
| Stone Setter | 735.687-034 | Sedentary/Unskilled | 12,000 |

Tr. 23; 58.

ALJ Heller found the VE testimony to be consistent with the DOT or is within the VE's knowledge, education, training and experience. Tr. 23. Because positions exist in the national economy which Plaintiff could perform even with the limitations contained in the RFC, ALJ Heller concluded that a finding of "not disabled" was appropriate.   Id.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2021, through the date of the decision (20 CFR 416.1520(g) and 416.920(g)).**

This finding is disputed.

ALJ Heller concluded that, based on the application for Period of Disability and DIB, and SSI protectively filed on December 4, 2021, Plaintiff is not disabled under sections 216(i) and 223(d) and 1614(a)(3)(A) of the Social Security Act. Id.

## V.    Plaintiff's Claims

### Whether the ALJ Properly Evaluated the Medical Opinions When Assessing Plaintiff's RFC

Plaintiff argues that ALJ Heller erred, and his Order was not supported by substantial evidence, because it failed to acknowledge the entirety of Dr. Keen's report and failed to incorporate his opinions into key findings in the RFC. ECF No. 14, p. 11. According to Plaintiff, Dr. Keen identified two

specific issues which required further evaluation and treatment: "vertigo and instability with balance" and "issues with memory." Id.; Tr. 733. Despite ALJ Heller's finding that Dr. Keen's opinion was persuasive, ALJ Heller failed to recognize Plaintiff's balance issues, her trouble with reasoning, and the need for noise limitations. ECF No. 14, p. 11. Plaintiff contends that the RFC should have limited Plaintiff to "never" balancing; should have considered Plaintiff's "devastating" memory issues; should have limited Plaintiff to unskilled work (with an SVP level 1 or 2); and should have included noise restrictions. Id., p. 11-12. Plaintiff suggests that Dr. Keen adopted Plaintiff's reported symptoms of vertigo, dizzy spells, and noise sensitivity as findings which should have impacted the RFC assessed by ALJ Heller. Plaintiff ultimately argues that had ALJ Heller properly incorporated Dr. Keen's opinion into the RFC, it would have been much more restrictive. Id. at 13.

Plaintiff also contends that ALJ Heller erred in placing excessive weight on the consultive examination of Dr. Kelly. Id. One of Dr. Kelly's examinations occurred over a year before Plaintiff's craniotomy and application. Tr. 453-457. Plaintiff believes it was wholly inappropriate to give any weight to that opinion since it was conducted prior to Plaintiff's surgery, which only exacerbated her condition. ECF No. 14, p. 14. The fact that this opinion was consistent with other medical evidence only compounded ALJ Heller's error.

Because of these errors – not relying on Dr. Keen's opinion regarding balance, vertigo, memory, and noise limitations, but instead relying on Dr. Kelly's untimely examination – Plaintiff contends the resulting RFC was in error and was not supported by substantial evidence. Plaintiff requests a reversal and a remand on this issue. Id.

**Whether the RFC is Supported by the Substantial Evidence**

Plaintiff next contends that because of the errors discussed above, ALJ Heller assessed an RFC that was incomplete and unsupported by substantial evidence. ECF No. 14, p. 14. Plaintiff should have been limited to balancing "never" as opposed to "occasionally"; her memory issues should have limited her to unskilled work; and the ALJ should have included noise limitations. Id. at 15. Additionally, Plaintiff believes ALJ Heller committed further error by failing to account for Plaintiff's vision and reaching limitations. Id.

According to Plaintiff, her vision issues were well documented in her medical record: she had paralysis of the left side of her face which limited her ability to fully close her left eye; she had chronic dry and blurry eyes that required hourly eye drops (Tr. 514; 655; 665; 691); she had spotting in her vision caused by "punctuate epithelial erosions" (Tr. 664; 691); and she had blepharitis, inflammation of the eye, and nystagmus in both eyes (Tr. 691-

92). Despite these documented problems, there were no restrictions in the RFC relating to her blurry and spotty vision and chronic dry eye. ECF No. 14, p. 15. This error was only exacerbated when ALJ Heller found that Plaintiff could perform three occupations – Stone Setter, Lens Inserter, and Lens Block Gauger – which require extensive visual requirements. Plaintiff contends that the RFC assessed by ALJ Heller was not supported by substantial evidence, and as a result, none of the listed occupations were suitable for Plaintiff because they require visual acuity that far exceeds Plaintiff's abilities due to her documented conditions. Id. at 16.

Plaintiff also argues that ALJ Heller failed to account for reaching limitations in his RFC. Id. at 17. Plaintiff's therapy notes confirm that Plaintiff is unable to independently ambulate, shower, or reach overhead cabinets repeatedly. Id.; Tr. 749-763. Moreover, Plaintiff's use of a cane would necessarily restrict her ability to simultaneously reach for items. Plaintiff believes a remand is necessary so that such limitations can be included in Plaintiff's RFC.

**Whether the ALJ Failed to Identify and Resolve the Apparent Conflict Between the VE's Testimony and the DOT, Resulting in an Occupation Provided at Step 5 that is Contrary to Plaintiff's RFC**

Plaintiff next contends that ALJ Heller and the VE utilized an occupation which was inconsistent with the limitations included in the RFC.

Specifically, the occupation of Lens Inserter requires the employee to "fit lenses into plastic sunglass frames and place frames on [a] conveyor belt that passes under heat lamps." ECF No. 14, p. 18. Plaintiff argues that such a moving conveyor belt would not be consistent with the restriction that Plaintiff never work around "mechanical parts," Tr. 15, and would be a danger to Plaintiff given her dizziness, balance, and gait issues. Tr. 21. Thus, that position should not have been included among the VE's suggested occupations, undermining the conclusion that sufficient positions existed in the national economy to render Plaintiff not disabled. Plaintiff argues that remand would be necessary to correct this issue.

## VI.    Commissioner's Response

### Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence

According to the Commissioner, the ALJ properly evaluated the consultative examination report provided by Dr. Keen because Dr. Keen did not offer a "medical opinion" as that term is understood under the applicable regulations. Dr. Keen's report primarily consisted of recitations of Plaintiff's subjective complaints and the objective results of the examination. Tr. 728-33. While Dr. Keen[5] did confirm that Plaintiff has memory loss and balance

---

[5] The Commissioner erroneously refers to "Dr. Kelly" on pages 7-8. Based on context and citations, the Commissioner intended to refer to Dr. Keen in those portions of the Brief.

issues, he did not provide a medical opinion regarding the impact of such conditions on Plaintiff's ability to work. ECF No. 19, p. 7. Instead, Dr. Keen suggested that Plaintiff be "evaluated by a balance clinic so they can further evaluate what is going on and possibly treat [her]," and that Plaintiff needed a "counselor to evaluate" her memory issues. Tr. 733. The Commissioner argues that because Dr. Keen did not address what Plaintiff could do despite her impairments, or detail what limitations or restrictions should be placed on her ability to work, his statements did not constitute a medical opinion, and such statements did not need to be incorporated into the RFC. See 20 CFR § 404.1513(a)(2).

With respect to Plaintiff's claim that ALJ Heller gave too much weight to the opinion offered by Dr. Kelly, the Commissioner responds that ALJ Heller properly considered Dr. Kelly's two reports – one which pre-dated Plaintiff's craniotomy and onset date and one which occurred after that date – in assessing Plaintiff's RFC. ECF No. 19, p. 9; Tr. 452-57; 734-40. As found by Dr. Kelly and ultimately concluded by ALJ Heller, (1) Plaintiff could understand, remember, and execute simple and complex instructions; (2) Plaintiff could make judgments on simple and complex work-related tasks; and (3) Plaintiff's communication skills and social skills were adequate for effective functioning in social and work environments. Tr. 18-19; 457; 739.

ALJ Heller properly considered Dr. Kelly's multiple opinions and incorporated them into the RFC. See 20 CFR § 1520c(b)(1) ("when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis"). Dr. Kelly's prior opinion was rendered in close proximity to Plaintiff's onset date, was consistent with his second opinion, and was clearly relevant to Plaintiff's current condition. ECF No. 19, p. 10.

The Commissioner concludes that Plaintiff is merely requesting that this Court reweigh the evidence and shift the weight that should be given to each of the consulting experts. The Commissioner argues that since this Court is precluded from deciding the facts anew, reweighing the evidence, or substituting its judgment for that of the Commissioner, such action would be error; and because there is substantial evidence to support the ALJ's decision, it must be affirmed.

### Substantial Evidence Supports the ALJ's Decision Not to Include Vision and Reaching Limitations in Plaintiff's RFC

The Commissioner contends that ALJ Heller properly considered the medical evidence and concluded that no vision limitations were required in Plaintiff's RFC. Id. at 11. According to the Commissioner, while the medical evidence does show that Plaintiff had vision issues manifesting in "spotty

vision, blurry vision, chronic inflammation and dry eye" (ECF No. 14, p. 15), the evidence also contains Plaintiff's subjective reports of no eye or vision issues (Tr. 718), as well as numerous objective examination results confirming no eye or vision issues. Tr. 431; 440-42; 492; 495; 499; 512; 521; 522; 543; 548; 558; 643; 660; 665; 690; 718; 720; 732. The Commissioner thus concludes that ALJ Heller's decision not to include restrictions relating to vision in the RFC was supported by substantial evidence, even if the evidence may preponderate against it.

Similarly, the Commissioner argues that while there may have been evidence supporting a reaching limitation in the RFC, there was also evidence that supported the opposite conclusion not to include that limitation in the RFC. ECF No. 19, p. 12. Plaintiff subjectively reported she is unable to independently reach into overhead cabinets (Tr. 749-63; ECF No. 14, p. 17), but the objective evidence confirmed that she had a full range of motion to reach overhead and had 5/5 strength in her upper extremities. Tr. 19; 21-22; 512; 522; 543; 643; 651; 660; 664; 720; 729; 732. Thus, the evidence was at best conflicting. As a result, the Commissioner argues ALJ Heller's decision not to include reaching limitations in the RFC was supported by substantial evidence.

**Substantial Evidence Supports the ALJ's Step Five Analysis**

The Commissioner concedes that one of the occupations – Lens Inserter – would require Plaintiff to work around moving mechanical parts. ECF No. 19, p. 13. Nonetheless, because the VE proposed two other positions – Stone Setter and Lens Block Gauger – which had a combined 35,000 available positions in the national economy, any error here was harmless. Id., p. 13-14. The Commissioner asserts that because there were two other available positions which existed in substantial numbers in the national economy which Plaintiff could perform despite the restrictions contained in the RFC, Plaintiff is not disabled and ALJ Heller's decision should be affirmed.

## VII.  Legal Analysis

**ALJ Heller Properly Evaluated the Medical and Mental Health Evidence When Assessing Plaintiff's RFC**

Plaintiff contends that ALJ Heller failed to give appropriate weight to the report provided by Dr. Keen and provided too much weight to the opinion of Dr. Kelly. Both contentions are wrong.

First, with respect to Dr. Keen, a review of his report in fact confirms that it did little more than provide a recitation of Plaintiff's subjective complaints and provide a suggestion regarding issues which should be further examined, evaluated, or treated. Tr. 733. Noting that Plaintiff has

complained of a condition and suggesting that the matter should be the subject of further inquiry is not the same thing as opining that a person has a condition which requires consideration in the assessment of an RFC. As noted by the Commissioner, such a suggestion is not a "medical opinion" which must be considered or incorporated into an RFC. ECF No. 19 p. 7-8; 20 CFR § 404.1513(a)(2) ("a medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). Frankly, Dr. Keen offered nothing which would be relevant to the assessment of an RFC. ALJ Heller did not error in that regard.

Plaintiff also contends that ALJ Heller gave too much weight to the opinion of Dr. Kelly which she contends predated her craniotomy and the onset of her disability. ECF No. 14, p. 13. While it is true that Dr. Kelly's October 2020 examination (Tr. 453-457) predated Plaintiff's craniotomy and application, his second examination in December 2022 was after Plaintiff's craniotomy and onset date. Tr. 734-40. This second examination and report was consistent with the prior report and found that: (1) Plaintiff could understand, remember, and execute simple and complex instructions; (2) Plaintiff could make judgments on simple and complex work-related tasks; and (3) Plaintiff's communication skills and social skills were adequate for

effective functioning in social and work environments. Tr. 18-19; 457; 739. ALJ Heller properly considered both opinions as part of his assessment of Plaintiff's RFC, and ALJ Heller did not error in that regard. There was substantial evidence to support his findings.

### Substantial Evidence Supports ALJ Heller's Decision Regarding Plaintiff's RFC

Plaintiff next contends that ALJ Heller failed to include vision and reaching limitations in the RFC because of evidence in the medical record which would support such limitations. Despite the existence of such evidence, substantial evidence and proper legal analysis still supports ALJ Heller's decision that Plaintiff was not disabled.

The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but whether there is sufficient evidence here to confirm that substantial evidence supports ALJ Heller's decision. Phillips, 357 F.3d at 1240 n.8 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021). There is no doubt that ALJ Heller's decision is so supported. Even if this Court disagrees with ALJ Heller's resolution of the factual issues and would resolve those disputed factual issues differently, ALJ Heller's decision must

be affirmed where, as here, it is supported by substantial evidence in the record as a whole. See Baker o/b/o Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

Regarding Plaintiff's contention that ALJ Heller erred by failing to include vision limitations in Plaintiff's RFC, there was evidence in the medical record to support such a limitation. ECF No. 14, p. 15. However, there was also evidence in the record demonstrating that Plaintiff's eye or vision issues had improved. Tr. 431 ("extraocular muscles intact. No spontaneous or gaze-evoked nystagmus"); 440 ("reliability was good. Automated visual field device used was Zeiss. Threshold was 24-2. Findings include non-specific defects, normal observations"); 495 ("normal"); 514 (Plaintiff "is not having major issues with eye pain, dry eye, excess tearing, or visual loss. Occasionally the vision is blurry in the left eye. She does not have to use drops or ointment very often. She does not have a significant balance complaint"); 522 ("pupils are equal, round and reactive to light"); 543 ("pupils are equal, round and reactive to light"); 548 ("extraocular muscles intact. No spontaneous or gaze-evoked nystagmus"); 643 (Plaintiff "states that her left eye closure is 99% back to normal"); 647 ("there has been ongoing improvement – now able to close her eye without any intervention"); 660 ("extraocular movements intact"); 718 ("no eye pain, no blurred vision"); 732

("Vision (without glasses): OU:20/13; OD 20/15; OS 20/20-1"). Plaintiff's vision was improving over time, and by September 2022, Plaintiff's left eye had improved and she was reporting "no eye pain or blurred vision." Tr. 718. In fact, by November 2022 her vision was noted as 20/20. Tr. 732. Thus, there was evidence in the record which would support ALJ Heller's decision not to include a vision limitation in the RFC.

Similarly, while Plaintiff is correct in pointing out that there was subjective evidence in the record to support a "reaching" limitation (ECF No. 14, p. 17), there is ample objective evidence to the contrary which would weigh against including such a limitation. As noted by the Commissioner, Plaintiff had a full range of motion to reach overhead and 5/5 strength in her upper extremities. Tr. 19; 21-22; 512 (5/5 strength, flexion, abduction and extension); 522 ("normal range of motion"); 543 ("normal range of motion"); 643 (5/5 strength, flexion, abduction and extension); 651 (5/5 strength, flexion, abduction and extension); 720 (range of motion, stability, and muscle strength normal). While Plaintiff may have reported limitations in reaching, those were not confirmed by the objective medical evidence. Moreover, the fact that Plaintiff was using a cane to ambulate would only impact her ability to reach while she ambulates – not once she reaches her destination and is called on to work. At best, there was a conflict in the evidence regarding

Plaintiff's ability to reach. Under such circumstances, there would be substantial evidence to support ALJ Heller's decision to exclude any such limitation in Plaintiff's RFC. There was no error in that regard.

### Plaintiff Can Perform Jobs Which Exist in Significant Numbers in the National Economy

The Commissioner concedes that one of the positions identified by the VE and ALJ Heller – Lens Inserter – would not be appropriate because it would involve a moving conveyor belt, and Plaintiff was specifically prohibited by her RFC from working around "moving mechanical parts." Tr. 15. As a result, 27,000 out of the 62,000 identified jobs would be eliminated.

"Whether there are a significant number of jobs a claimant is able to perform with [her] limitations is a question of fact to be determined by a judicial officer [*i.e.*, the ALJ]." Viverette, 13 F. 4th at 1318 (quoting Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986)). "It is not appropriate for [this] court to decide, in the first instance, whether a *relatively low number* qualifies as a 'significant number' of jobs." Kimes v. Comm'r, SSA, 817 F. App'x 654, 659 (10th Cir. 2020) (emphasis added). Generally, "judicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and because "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's

factual situation.'" Viverette, 13 F.4th 1309 at 1318 (quoting Allen v. Barnhart, 357 F.3d 1140, 1146 (10th Cir. 2004)).

"That is not to say that under no circumstances would a specific number of jobs be considered *per se* significant for step five purposes." Ledford v. Comm'r of Soc. Sec., No. 8:20-CV-2516-JSM-SPF, 2022 WL 2195001, at *4 (M.D. Fla. June 1, 2022), report and recommendation adopted, No. 8:20-CV-2516-JSM-SPF, 2022 WL 2193158 (M.D. Fla. June 17, 2022); see also Allen, 357 F.3d at 1146 (noting that harmless error "might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater"). The Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015). Indeed, some courts have concluded that remand is unnecessary when the number of non-conflicted jobs in the national economy is greater than 100,000, because any such error would be harmless. Denmark v. Kijakazi, 2022 WL 831903, at *7 (M.D. Fla. March 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 551,000 non-conflicted jobs in the national economy); Rodriguez v. Comm'r Soc. Sec. Admin., 2022 WL 4364506, at *5 (M.D. Fla.

Sept. 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 220,000 non-conflicted jobs in the national economy); accord Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013) (finding harmless error because there were approximately 650,000 non-conflicted jobs available in the national economy); Carpenter v. Acting Comm'r of Soc. Sec., No. 5:23-CV-00037-KDB, 2023 WL 7726706, at *5 (W.D.N.C. Nov. 15, 2023) (concluding that it was harmless error when 134,000 non-conflicted positions existed in the national economy).

In this case, 43.5% of the jobs identified by the VE were affected by the conflict. This left approximately 35,000 jobs in the national economy that Plaintiff could perform. Tr. 23. This uncontested figure is less than the number of jobs in Denmark, Rodriguez, Anderson, and Carpenter, but more than the jobs in Altha (23,800). Other courts have considered an even lower number of jobs in the national economy to be a significant number. See Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (holding that 840 jobs was significant). As the Atha court held, although the ALJ bears the burden to identify jobs in the national economy that a plaintiff can perform, "the ALJ need not identify a certain number of jobs for its decision to be supported by substantial evidence." Id. at 934. Indeed, ALJ Heller specifically ruled that "[e]ach of the jobs, considered singularly or collectively, would be

a substantial number within the national economy." Tr. 23. ALJ Heller thus considered whether there would be sufficient positions in the national economy if less than all the proposed positions were available and concluded that there would be a significant number of jobs in the national economy even if only one of the positions remained.

The question that remains is whether eliminating 43.5% of the identified jobs in the national economy is a sufficient reason to require a remand. None of the cases reviewing the issue identified in <u>Viverette</u> focus on what percentage of the identified jobs was eliminated by the alleged error. Thus, this Court will not focus on that issue. Instead, as has been determined by the courts who have examined this issue, this Court concludes that the existence of 35,000 available jobs in the national economy is sufficient, substantial evidence to support ALJ Heller's decision, rendering any error made by including the 27,000 Lens Setter jobs in the step five analysis harmless. There is no basis for a remand on this issue. The remaining two positions provide sufficient jobs in which Plaintiff could serve despite the limitations of her RFC.

## VIII.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security Disability Benefits is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment for the Commissioner.

**DONE AND ORDERED** on September 29, 2025.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**